OPINION
WINDHAM, Associate Justice.
Summary
This small claims case arises from a minor accident on Mission Dam Road on August 6, 2003. Plaintiff had judgment for $1,077.03 and costs. Defendant’s counter claim was, by necessary implication, disallowed. Defendant appeals.
Both vehicles had left the scene by the time the police investigated and prepared a report. The trial was marred by the failure of the recording system to pick up *24 the beginning of the proceedings so that it cannot be determined if the witnesses were sworn and a key witness is not identified in the transcript.
Based on inconsistencies in his statement to the police, the trial judge chose not to believe defendant and it appears that was the basis for the trial court judgment.
DISCUSSION
Trial judges are in the best position to determine the credibility of witnesses, and their conclusions in this regard are entitled to great deference. This Court cannot routinely assume the role of a super jury to second guess the factual determinations of our trial courts. Furthermore, section 4-4-301 of the Laws of the Confederated Salish and Kootenai Tribes, Codified (hereinafter cited as “CSKT Laws Codified”) specifies that “The hearing and disposition of small claims actions shall be informal.” There appears to be no precise definition in the decided cases of the term “informal.”
According to one school of thought, procedural niceties need not be observed because the purpose of the small claims court is to provide for the informal disposition of claims. For example, in Johnson v. Capital Ford Garage, 250 Mont. 430, 820 P.2d 1275 (1991), the small claims court allowed plaintiff to introduce exhibits without laying a proper foundation. This was held not to be an abuse of discretion in a small claims case. In other words, if' there is an injustice, it is not too important because the amounts involved are small.
We do not accept this philosophy. Aside from a traffic citation, a small claims case may be the only contact with the justice system which a citizen may have. It is important, therefore, that these proceedings be fail' and that they be perceived as fair. Accordingly, in spite of our great reluctance to question the factual determinations of the trial court, we reverse and remand for the following reasons.
1. The record is incomplete. Although not as extreme as the situation present in Spence v. Ortloff, 271 Mont. 533, 898 P.2d 1232 (1995) where a reversal was required because the entire record was lost, there is enough missing material to cast doubt on the accuracy of the record; and we hold that the requirement of section 4-4-304, CSKT Laws Codified, that the proceedings be tape recorded, was not met.
2. Material which could have made a difference in the result is missing from the record. Specifically:
a. The statement of Vicky Matt, the supposed driver of plaintiffs vehicle. Plaintiff testified that she had moved out of the area, that her statement had been taken by the police, but that it was missing. This statement is, of course, a hearsay document, but the trial court considered other hearsay.
b. The photographs of plaintiffs car mentioned in the police report. According to the record, the vehicle in question was a 2001 Ford Focus 4-door sedan. The damage claimed was to the drivers-side outside mirror and the windshield. Plaintiff (who was not present at the accident scene) testified, “He busted off my side-mirror. It must have went over and shattered my windshield in about a million pieces.” The unnamed witness stated only that “he clipped me.” These photographs might have helped the trial court to clear up some of the discrepancies in the evidence discussed below.
3. There are unexplained discrepancies in the record.
a. The unnamed witness testified that the accident happened on “Little Road,” whereas, the police report shows that it *25 happened on Mission Dam Road. Perhaps the witness said or meant “a little road” There is also uncertainty as to whether the accident happened on August 6th or 7th.
b. The testimony mentioned only damage to the outside mirror and the “windshield” of plaintiffs car. However, the repair estimate includes damage to the left fender and to the “outer panel” and a “trim panel.” The police report mentions “a scrape down that (left) side of the car.” It may be that the damage other than testified to was preexisting; but this was not explored. Also, the mechanism of the claimed damage to the windshield is not explained. If any part of Mr. Courville’s truck struck plaintiffs mirror, it seems more likely that it would have pushed it back against her car and not folded it forward so as to strike the windshield. This is consistent with the police report which states that the driver’s side door window was broken. The body shop estimate includes “replace LT Glass.... ” None of this was explored.
c. The damage to Mr. Courville’s truck seems inconsistent with the testimony. The photographs of Mr. Courville’s vehicle show a running light popped out on the driver’s side and a long scrape from the top of this light fading off into the door. At first blush, the elevation of this damage seems too low to have been caused by Ms. Steven’s outside mirror. Also the crease seems to be too narrow for a mirror to have caused it. Finally it is rusty, It is possible that this could have occurred in the short time involved, but it seems unlikely. Without the photographs of Ms. Steven’s car, or at least some evidence of the relative heights of the objects which came into contact with each other, the truth cannot be determined.
4. The judgment was based on hearsay.
The main difficulty with the case is that the trial judge based his decision to disbelieve defendant and to find for plaintiff on a hearsay document, to wit: the police report. This was not offered and received without objection, but was requested by the trial court. Few pro se litigants, even if knowledgeable on the rules of evidence, would have had the courage to object.
It was only upon reading this report that the discrepancy in defendant’s story emerged. The missing statement from the other driver might also have revealed discrepancies. We cannot tell from this record. In any case, both of these documents are unredeemed hearsay.
The rules barring hearsay evidence have been developed for good reasons. An absent witness may or may not be reliable, but there is no way to test for this. A piece of paper cannot be cross-examined. Under the Montana Rules of Evidence, “investigative reports by police and other law enforcement personnel” are specifically excluded from the named exceptions to the hearsay rule. (Rule 803(8), MT Rules of Evidence.)
We do not mean to criticize the trial judge, who was operating under the undefined concept of “informal.” Nor do we wish to restrain the trial courts in non-jury cases from receiving questionable evidence, with or without objection, reserving the ruling and considering the matter in a more tranquil setting during breaks in the proceedings or while the case is under submission; then, giving the evidence the appropriate weight or rejecting it altogether.
Nonetheless, we hold today that a small claims court dealing with pro se litigants has a duty to serve as a gatekeeper so that the proceedings and the result are not tainted by improper and unreliable evidence. We cannot say that that, was *26 done here. Also, a trial judge trying’ to get at the truth from parties untrained in producing and presenting evidence should actively examine the witnesses and the evidence so that some semblance of the actual facts can be developed. We suggest that pretrial proceedings -requiring the parties to identify the proposed testimony and exhibits in advance would be helpful. In this way, the trial court would have an opportunity to consider the matter before tidal in order to identify conflicts and problem areas and perhaps to subpoena additional witnesses who might shed light on the matters at issue.
DISPOSITION
The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.